1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiff Princess Robinson

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRINCESS ROBINSON, individually and as successor in interest to Robert Robinson, deceased.<br><br>                              Plaintiff,<br><br>vs.<br><br>COUNTY OF RIVERSIDE; YASH PATEL; JOSHUA FANEUFF; FLORIN BLAJ; and DOES 1 through 10, inclusive,<br><br>                              Defendants. | **Case No: 5:23-cv-799**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983)<br>2. Fourteenth Amendment – Failure to Protect (42 U.S.C. § 1983)<br>3. Fourteenth Amendment – Interference with Familial Relations (42 U.S.C. § 1983)<br>4. Municipal Liability – Failure to Train (42 U.S.C. § 1983)<br>5. Municipal Liability – Unconstitutional Custom, Policy, or Practice (42 U.S.C. § 1983)<br>6. Negligence – Wrongful Death<br>7. Negligence – Professional Medical Malpractice<br>8. Failure to Summon Medical Care (Cal. Gov. Code § 845.6)<br>9. Bane Act (Cal. Civ. Code § 52.1)<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff PRINCESS ROBINSON, individually and as successor in interest to Robert Robinson, deceased, for her Complaint against Defendants, County of Riverside (including its Riverside Sheriff's Department and its Robert Presley Detention Center), YASH PATEL, JOSHUA FANEUFF, FLORIN BLAJ, and DOES 1-10, and hereby alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this Court because all incidents, events, and occurrences giving rise to this action occurred in the County of Riverside, California.

3.     The survival claims in this action are joined with the individual wrongful death claims pursuant to CCP § 377.62, as all claims arise out of the same wrongful acts or neglect.

4.     Plaintiff filed a timely claim under Government Code Section 911.2 et al., and brings pendant actions under state law. Plaintiff's claim was rejected on November 8, 2022.

## INTRODUCTION

5.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants, including the County of Riverside and its Robert Presley Detention Center, and the County's involved deputies and employees, for violating various rights under the United States Constitution and California law in connection with the

in-custody death of Plaintiff's son, the deceased, Robert Robinson, on or around September 7, 2022.

## **PARTIES**

6.      At all relevant times, Robert Robinson ("DECEDENT") was an individual residing in the County of Riverside.

7.      Princess Robinson ("PLAINTIFF") is an individual residing in the County of Riverside, California, and was at all relevant times the natural mother of DECEDENT. PLAINTIFF sues in her individual capacity as the mother of DECEDENT and also as DECEDENT's successor in interest.  PLAINTIFF seeks both survival and wrongful death damages under federal and state law, as well as punitive damages against the individual defendants.

8.      At all relevant times, Defendant COUNTY OF RIVERSIDE ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of political subdivision for the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, and employees, including the Riverside County Sheriff's Department ("RCSD") and its agents and employees, the Robert Presley Detention Center ("RPDC") and its agents and employees.  At all relevant times, Defendant COUNTY was responsible assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, COUNTY was the employer of all named Defendants.

9.      Defendants YASH PATEL ("PATEL"), JOSHUA FANEUFF ("FANEUFF"), and FLORIN BLAJ ("BLAJ") are deputies for the RCSD who, at all relevant times, were working at the RPDC as correctional officers. Defendants PATEL, FANEUFF, and BLAJ were at all relevant times acting under color of law and within the course

and scope of their duties as deputies for the RCSD and the COUNTY. Defendants PATEL, FANEUFF, and BLAJ were acting with complete authority and ratification of their principal, Defendant COUNTY.

10.    Defendants DOES 1-8 ("DOE CORRECTIONAL OFFICERS") are deputies and correctional officers for the COUNTY, including at RPDC, including those employed as nurses and other medical professionals, as well as officers responsible for identifying medical and mental health issues and providing medical attention, medical screening, and medical care to inmates and detainees. DOE CORRECTIONAL OFFICERS include such officials working on behalf of COUNTY and hired through, or employed directly by, a third-party contractor. DOE CORRECTIONAL OFFICERS also include those responsible for transporting inmates within the facility. DOE CORRECTIONAL OFFICERS were at all relevant times acting under color of law within the course and scope of their employment with the RPDC. DOE CORRECTIONAL OFFICERS were acting with complete authority and ratification of their principal, Defendant COUNTY at all relevant times.

11.    Defendant DOE 9 ("RPDC DOE SUPERVISOR") is a supervisory deputy for the RPDC who at all relevant times was acting under color of law and within the course and scope of his/her employment with the RPDC. At all relevant times, RPDC DOE SUPERVISOR was acting with the complete authority and ratification of his/her principal, Defendant COUNTY. RPDC DOE SUPERVISOR includes those charged with coming up with the policies regarding medical care and medical screening, providing training on medical care and medical screening, and supervising nurses and medical professionals at RPDC.

12.    Defendant DOE 10 ("RCSD DOE SUPERVISOR") is a managerial, supervisorial, and policymaking employee of the RCSD. At the time of the incident, RCSD DOE SUPERVISOR was acting under color of law, within the course and scope of his/her duties for the RCSD, and within the scope of his/her employment

with the COUNTY.  At all relevant times, RCSD DOE SUPERVISOR was acting with the complete authority and ratification of his/her principal, Defendant, COUNTY.

13.    Defendants DOES 1-10 are sued in their individual capacities.

14.    On information and belief, Defendants DOES 1-10 were residents of the County of Riverside, California.

15.    In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10, were acting on the implied and actual permission and consent of Defendant COUNTY, and RCSD and the RPDC.

16.    The true names and capacities of DOES 1-10 are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek to amend this Complaint to completely identify these Defendants when their true names and capacities have been ascertained.

17.    All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

18.    On October 30, 2022, Plaintiff filed a comprehensive and timely claim for damages with the County of Riverside pursuant to applicable sections of the California Government Code. The claim was rejected on November 8, 2022.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

19.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

20.    On or around September 6, 2022, law enforcement officials from the Riverside Police Department arrested and detained DECEDENT at his home and transported

him to RPDC, based on an alleged failure to appear before DECEDENT's parole officer.

21.    After arriving at RPDC, DECEDENT was booked and screened by DOE CORRECTIONAL OFFICERS.

22.    During the booking and screening process, DECEDENT informed DOE CORRECTIONAL OFFICERS that he was having suicidal thoughts. On information and belief, DOE CORRECTIONAL OFFICERS should have placed DECEDENT on suicide watch, including based on DECEDENT's statements that he was suicidal.

23.    On information and belief, the DOE CORRECTIONAL OFFICERS who booked and screened DECEDENT were not qualified to perform medical and/or mental health screening, to identify whether an inmate/detainee posed a suicide risk, or to appropriately assign inmates/detainees to cells based on their medical and/or mental health condition and suicide risk.

24.    On information and belief, DECEDENT was not properly and adequately screened by a Registered Nurse upon his initial arrival to and booking at RPDC to determine his fitness for incarceration at the RPDC—not in person, and not through "telemedicine."

25.    Despite their knowledge of DECEDENT's suicidal statements, DECEDENT was not placed on suicide watch. Rather, DOE CORRECTIONAL OFFICERS improperly placed DECEDENT in a single cell with bedsheets.  On information and belief, RCSD and RPDC suicide watch protocols require placement of inmates/detainees in a cell with a clear door or large window on the door allowing a full view of the cell from the hall outside; that is visible via a continuous remote video feed that is continually monitored by jail staff; that contains no elevated objects/locations to which items may be tied; and that contains no objects that are commonly used to engage in self-harm or suicide attempts, such as shoelaces, ropes, cords, bedsheets, and sharp objects. Pursuant to Title 15 and basic police training,

suicide watch protocols further require frequent in-person monitoring of inmates/detainees at 15- or 20-minute intervals by jail staff.

26.     Contrary to the suicide watch protocols, the cell into which DOE CORRECTIONAL OFFICERS placed DECEDENT did not contain a clear door or large window.  Also contrary to the suicide watch protocols, the cell where DECEDENT was housed was not subject to full and continuous video monitoring of the entire cell by jail staff in that a video feed of the cell only captured the front portion of the cell and, on information and belief, the video feed was not continuously monitored by jail staff, including not being monitored by Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS.  Also contrary to the suicide watch protocols, the cell where DECEDENT was housed contained a bunk bed, enabling objects to be tied to the top bunk; contained bedding, including at least one bedsheet; and was only monitored once per hour.

27.     The following day, September 7, 2022, at or about 4:45 p.m., DECEDENT repeated to Defendant PATEL that he was suicidal and stated that he was going to kill himself. DECEDENT was then seen by RPDC mental health staff, including one or more of DOE CORRECTIONAL OFFICERS. On information and belief, DOE CORRECTIONAL OFFICERS performed only a cursory mental health evaluation, and the mental health evaluation was inadequate to identify and address DECEDENT'S suicidal ideation that was a serious, obvious, and immediate medical and mental health emergency.

28.     On information and belief, the DOE CORRECTIONAL OFFICERS who performed the inadequate mental health evaluation improperly dismissed DECEDENT's suicidal statements, and wrongly and unreasonably concluded without evidence that DECEDENT did not pose a suicide risk or require further medical or mental health attention. Based on this cursory and inadequate evaluation, at or about 5:00 p.m., DOE CORRECTIONAL OFFICERS, PATEL, and FANEUFF returned

DECEDENT to the same cell he had previously occupied, which did not comply with any suicide watch protocols. On information and belief, these officials failed to ensure items that could be used for self-harm were removed from the cell, including the bedsheet, failed to ensure more frequent monitoring of DECEDENT than the current once-hourly checks by jail staff, and failed to ensure that any additional medical or mental health attention was provided to DECEDENT.

29.     These failures to increase the frequency of monitoring of DECEDENT or move him to a suicide watch protocol–compliant cell was due in part to the dismissal of DECEDENT's statements that he intended to commit suicide by DOE CORRECTIONAL OFFICERS, and their knowing failure to communicate DECEDENT's suicidal ideation to other RCSD and/or RPDC officials.

30.     At or about 5:45 p.m., Defendant FANEUFF visited DECEDENT's cell area. On information and belief, during this time, FANEUFF did not question DECEDENT about whether he felt suicidal, which DECEDENT had previously stated, or otherwise take any steps to ascertain whether DECEDENT required medical or mental health attention, or posed a suicide risk.  A reasonable officer in FANEUFF's position, who knew that DECEDENT was suicidal, would have asked DECEDENT questions to determine whether he needed mental health attention at that time.

31.     Shortly after Defendant FANEUFF leaving DECEDENT's cell area, DECEDENT tied the bedsheet that was in his cell to the bunk bed and used it to hang himself.

32.     DECEDENT's cell was not checked again until approximately one hour later, at or about 6:50 p.m., by Defendant BLAJ, who found DECEDENT hanging with the bedsheet around his neck.  DOE CORRECTIONAL OFFICERS should have observed DECEDENT at approximately 6:00 p.m., and had they done so, they would have found DECEDENT within enough time to provide life-saving medical attention. The failure of the DOE CORRECTIONAL OFFICERS to check on DECEDENT at

15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training, directly resulted in DECEDENT's death.

33.    After delayed medical attention and unsuccessful attempts to resuscitate DECEDENT, DECEDENT was pronounced deceased by paramedics at or around 7:25 p.m.

34.    As alleged above, Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICIALS failed to provide appropriate medical and/or mental health attention to DECEDENT before DECEDENT hanged himself. These failures include, but are not limited to, these Defendants' failures to recognize the increased mental health and suicide risks posed by DECEDENT, of which, on information and belief, DECEDENT had advised these Defendants.

35.    PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICIALS also failed to provide sufficient and immediate medical attention to DECEDENT after he hanged himself. On information and belief, an Automated External Defibrillator ("AED") was not used as a life-saving measure on DECEDENT until after the paramedics arrived, and use of an AED or other life-saving equipment immediately after DECEDENT was found hanging in his cell (as opposed to merely chest compressions) could have prevented his death.

36.    Defendants were negligent in their conduct, including but not limited to negligence in RPDC procedures for screening, intake and housing of those in need of mental and medical health care, those who verbalize suicidal threats or ideation, and those who otherwise present identifiable suicide risks. Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS were negligently trained with respect to providing mental and medical care to inmates suffering from mental illness and presenting suicide risks, and these defendants were negligent in returning DECEDENT to his cell when he remained a danger to himself.

37.    Each of the named and unnamed Defendants were integral participants in the

denial of medical and mental health care, the failure to protect DECEDENT, the negligent treatment of DECEDENT, and other violations of DECEDENT's rights, or, alternatively, failed to intervene to prevent these violations, despite each Defendant having a responsibility and realistic opportunity to intervene to prevent these violations.

## FIRST CLAIM FOR RELIEF

**Fourteenth Amendment – Denial of Medical Care (42 U.S.C. §1983)**

**(Against Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS)**

38.     Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

39.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where prison officials are deliberately indifferent to detainees' medical needs.

40.     As alleged above, Defendants had actual knowledge of DECEDENT's suicidal ideations and related mental health needs based on DECEDENT's repeated statements on September 6 and 7, 2022, to Defendants that he was thinking of or intending to kill himself.

41.     Despite Defendants having actual knowledge of DECEDENT's suicidal ideations at the time of and following DECEDENT's booking at RPDC, on information and belief, DECEDENT was not properly and adequately screened by a Registered Nurse or any other medical or mental health professional during intake to determine his fitness for incarceration. The mental health evaluation that DECEDENT did receive was cursory, inadequate, and did not comply with basic

police training and RPDC protocols regarding handling situations where an inmate states that he is suicidal. DECEDENT was denied prompt and adequate medical attention when these Defendants improperly and prematurely released DECEDENT from the minimal and inadequate suicide evaluation they performed, even though he remained suicidal. This demonstrates deliberate indifference.

42.     Moreover, despite DECEDENT's clear statements that he was suicidal, DECEDENT was improperly housed at RPDC, including in that he was not placed on suicide watch and/or in a continuously monitored cell, and that items such as DECEDENT's bedsheets, with which he could (and did) harm himself, were not removed from DECEDENT's cell. Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS were objectively indifferent to DECEDENT's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention was provided to DECEDENT upon booking at RPDC as described herein.. These actions and omissions on the part of these Defendants were sufficiently harmful to evidence deliberate indifference to DECEDENT's serious and immediate medical needs in the form of suicidal ideation, and the indifference to DECEDENT's medical needs as alleged above was substantial.

43.     Defendants FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS returned DECEDENT to his cell, a cell that was not adequate to mitigate DECEDENT's suicide risk, having actual knowledge of DECEDENT'S suicidal ideations. Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS were deliberately indifferent to DECEDENT's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention was provided to DECEDENT, both before and after he hanged himself. These defendants failed to seek out a competent evaluation with a psychiatrist for DECEDENT. Upon information and belief, these defendants failed to notify other officials of DECEDENT'S suicidal ideations. These actions and omissions on the part

of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to DECEDENT's medical need as alleged above was substantial.

44.     Despite their awareness of DECEDENT's desire to kill himself on September 6 and 7, 2022, Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS failed to place DECEDENT on suicide watch. These Defendants failed to continuously monitor DECEDENT or place him in an adequately monitored cell, and failed to otherwise properly and promptly address his suicidal ideations. These Defendants took no actions to remove items from DECEDENT's cell that he could use to harm himself, including his bedsheet that he ultimately used to hang himself. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial.

45.     Defendants thus made intentional decisions regarding DECEDENT's confinement as alleged above. These conditions put DECEDENT at a substantial risk of suffering serious harm. Defendants did not take reasonable measures to abate this risk despite obvious consequences of not treating DECEDENT's suicidal ideations, and by not treating DECEDENT's suicidal ideations, Defendants caused DECEDENT's injury and death.

46.     DECEDENT's medical need was serious, in that the failure to treat DECEDENT's suicidal ideations and desire to harm himself resulted in DECEDENT's death. His need was obvious, in that he stated that he was suicidal and presented a suicidal affect.

47.     DECEDENT was entitled to receive necessary medical attention while in the care and custody of the COUNTY while detained/incarcerated at RPDC.  In doing the acts complained of, Defendants deprived DECEDENT of urgently needed medical care in violation of his rights under the Due Process Clause of the Fourteenth

Amendment.

48.     Defendants knew that failure to provide timely medical treatment to DECEDENT could result in DECEDENT harming or killing himself, but disregarded that serious medical need, directly causing DECEDENT great bodily harm and death.

49.     As alleged above, Defendants also failed to provide sufficient and immediate medical attention to DECEDENT after he hanged himself. On information and belief, an Automated External Defibrillator ("AED") was not used as a life-saving measure on DECEDENT until after the paramedics arrived, and use of an Automated External Defibrillator ("AED") or other life-saving equipment immediately after DECEDENT was found hanging in his cell (as opposed to merely chest compressions) could have prevented his death. This evidences Defendants' deliberate indifference toward DECEDENT's serious medical needs.

50.     Each of the several aforementioned actions and omissions of Defendants along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT. Defendants were deliberately indifferent to a substantial risk of serious harm to or serious medical needs of DECEDENT. Defendants' conduct served no legitimate penological purpose.

51.     Defendants are liable for the denial of medical care to DECEDENT, and for his injuries and death, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

52.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died and lost his earning capacity.

53.     Also as a direct and proximate cause of the acts of Defendants, Plaintiff suffered emotional distress, mental anguish, and pain. Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance

of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

54.     The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages.

55.     Plaintiff brings this claim as successor in interest to DECEDENT and seeks survival damages under this claim. Plaintiff seeks damages, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life. Plaintiff also seeks reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C § 1988 on this claim.

## SECOND CLAIM FOR RELIEF

### Fourteenth Amendment – Failure to Protect (42 U.S.C. §1983)

### (Against Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS)

56.     Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

57.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where prison officials are deliberately indifferent to known risks of harm to detainees.

58.     As alleged above, Defendants had actual knowledge of DECEDENT's suicidal ideations and related risk to his safety based on DECEDENT's repeated statements on September 6 and 7, 2022, to Defendants that he was thinking of or intending to kill himself.

59.     Despite Defendants having actual knowledge of DECEDENT's suicidal

ideations at the time of and following DECEDENT's booking at RPDC, on information and belief, DECEDENT was not properly and adequately screened during intake. Moreover, DECEDENT was improperly housed at RPDC, including in that he was not placed in a continuously monitored cell and including that items such as DECEDENT's bedsheets, with which he could (and did) harm himself, were not removed from DECEDENT's cell. Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS were objectively indifferent to the known risk that DECEDENT would harm himself or commit suicide when they failed to ensure that prompt and adequate attention was provided to DECEDENT upon booking at RPDC, including failure to place DECEDENT in an adequately monitored cell. These actions and omissions on the part of these Defendants were sufficiently harmful to evidence deliberate indifference to DECEDENT's serious risk of harm, and the indifference to DECEDENT's risk of harm as alleged above was substantial.

60.    In addition to DECEDENT not being properly screened at intake, Defendants FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS returned DECEDENT to a cell that was not adequate to mitigate DECEDENT's suicide risk, having actual knowledge of DECEDENT'S suicidal ideations, thereby making an intentional decision to house DECEDENT in a cell that was not suicide-watch compliant. DECEDENT was denied prompt and adequate attention when DOE CORRECTIONAL OFFICERS improperly and prematurely released DECEDENT from the minimal and inadequate suicide evaluation they performed, even though he remained suicidal. This demonstrates deliberate indifference. Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS were deliberately indifferent to DECEDENT's serious risk of harm when they failed to ensure that prompt and adequate attention was provided to DECEDENT in the form of suicide prevention. These defendants failed to seek out a competent evaluation with a psychiatrist for DECEDENT and failed to continuously monitor DECEDENT. Upon

information and belief, these defendants failed to notify other officials of DECEDENT'S suicidal ideations. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to a serious risk of harm to DECEDENT, by virtue of Defendants' failure to protect DECEDENT from same, and the indifference to DECEDENT's risk of harm as alleged above was substantial.

61.     Despite their awareness of DECEDENT's desire to hurt himself on September 6 and 7, 2022, Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS failed to place DECEDENT on suicide watch. These Defendants failed to continuously monitor DECEDENT or place him in an adequately monitored cell, and failed to otherwise properly and promptly address his suicidal ideations. These Defendants took no actions to remove items from DECEDENT's cell that he could use to harm himself, including his bedsheet that he ultimately used to hang himself. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to a serious risk of harm to DECEDENT, and the indifference to DECEDENT's risk of harm as alleged above was substantial.

62.     Defendants thus made intentional decisions regarding DECEDENT's confinement as alleged above. These conditions put DECEDENT at a substantial risk of suffering serious harm. Defendants did not take reasonable measures to protect DECEDENT from this risk despite obvious consequences of not acting upon DECEDENT's suicidal ideations, and by not taking action to protect DECEDENT from his suicidal ideations, Defendants caused DECEDENT's injury and death.

63.     DECEDENT's risk of harm was serious, in that the failure to respond to DECEDENT's suicidal ideations and desire to harm himself resulted in DECEDENT's death.

64.     DECEDENT was entitled to receive protection from the known risk of harm to his life while in the care and custody of the COUNTY while detained/incarcerated at

RPDC. In doing the acts complained of, Defendants failed to protect DECEDENT from a known risk of serious harm in violation of his rights under the Due Process Clause of the Fourteenth Amendment.

65.     Defendants knew that failure to protect DECEDENT could result in DECEDENT harming or killing himself, but disregarded that serious risk, directly causing DECEDENT great bodily harm and death.

66.     Each of the several aforementioned actions and omissions of Defendants along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT. Defendants were deliberately indifferent to a substantial risk of serious harm to DECEDENT. Defendants' conduct served no legitimate penological purpose.

67.     Defendants are liable for the failure to protect DECEDENT, and for his injuries and death, either because they were integral participants in the failure to protect, or because they failed to intervene to prevent such violations.

68.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died and lost his earning capacity.

69.     Also as a direct and proximate cause of the acts of Defendants, Plaintiff suffered emotional distress, mental anguish, and pain. Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

70.     The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages.

71.     Plaintiff brings this claim as successor in interest to DECEDENT and seeks survival damages under this claim. Plaintiff seeks damages, including for

DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life. Plaintiff also seeks reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C § 1988 on this claim.

## THIRD CLAIM FOR RELIEF

**Fourteenth Amendment – Substantive Due Process, Interference with Familial Relations (42 U.S.C. § 1983)**

**(Against Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS)**

72.   Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

73.   Plaintiff has a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in her familial relationship with her son, DECEDENT.

74.   As alleged above, Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS had actual knowledge of DECEDENT's suicidal ideations and intentions, yet failed to take necessary steps to protect DECEDENT from harm, including by placing him in a cell with a clear door or large window on the door allowing a full view of the cell from the hall outside; that was visible via a continuous remote video feed that is continually monitored by jail staff; that contained no elevated objects/locations to which items may be tied; that contained no objects that are commonly used to engage in self-harm or suicide attempts, such as shoelaces, ropes, cords, bedsheets, and sharp objects; and where DECEDENT would be monitored in person at 15- or 20-minute intervals by jail staff.

75.     Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS further failed to secure adequate medical or mental health treatment for DECEDENT or provide same, as alleged above, despite their knowledge of DECEDENT's serious need for such care.

76.     These actions of Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS, along with other undiscovered conduct, shock the conscience, in that Defendants acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiff.

77.     Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS thus violated the substantive due process rights of Plaintiff to be free from unwarranted interference with her familial relationship with DECEDENT, her son.

78.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS, Plaintiff suffered emotional distress, mental anguish, and pain. Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

79.     The conduct of Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of DECEDENT, and for the rights of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

80.     Plaintiff brings this claim in her individual capacity and seeks wrongful death damages under this claim, including for the loss of love, companionship, comfort,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

support, society, care, and sustenance of DECEDENT, as well as compensatory damages for her own emotional distress, mental anguish, and pain. Plaintiff also seeks reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C § 1988.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)
### (Against Defendants COUNTY and DOES 9-10)

81.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

82.    The acts of Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS deprived DECEDENT and Plaintiff of their particular rights under the United States Constitution.

83.    Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS acted under color of law.

84.    On information and belief, Defendants COUNTY and DOES 9-10 failed to properly and adequately train Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS on subject matters COUNTY and DOES 9-10 knew the other Defendants were virtually certain to have to address in the course of their work for COUNTY, including but not limited to the provision of medical/mental health attention and the provision of protection to suicidal inmates/detainees.

85.    The training policies of Defendant COUNTY were not adequate to train its deputies and correctional officers at RCSD and the RPDC to handle the usual and recurring situations with which they must deal, including but not limited to medical/mental health screening during intake at RPDC, the provision of prompt and adequate medical/mental health care, and the implementation of suicide watch

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

protocols for inmates/detainees who pose a known risk of self-harm. As stated above, upon arrival to RPDC, DECEDENT was not provided with medical/mental health care, nor was DECEDENT properly screened by a nurse to evaluate his overall physical fitness for incarceration. This is a clear violation of the policies of RCSD and the PRDC, and Defendants COUNTY and DOES 9-10 did not adequately train Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS with regard to said policies.

86.    Defendants COUNTY and DOES 9-10 were deliberately indifferent to the obvious consequences of their failure to train their officers adequately.

87.    The failure of Defendants COUNTY and DOES 9-10 to provide adequate training caused the deprivation of Plaintiff's and DECEDENT's rights by Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS; that is, Defendant COUNTY and DOES 9-10s' failure to train is so closely related to the deprivation of Plaintiff's and DECEDENT's rights as to be the moving force that caused their ultimate injuries.

88.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. As a direct and proximate cause of the acts of Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS, Plaintiff suffered emotional distress, mental anguish, and pain. Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life. Accordingly, Defendants are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

89.    Plaintiff brings this claim as successor in interest to DECEDENT and in her individual capacity and seeks survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of

enjoyment of life, as well as for Plaintiff's loss of DECEDENT's love, companionship, guidance, advice, and support. Plaintiff also seeks reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C § 1988.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom, Policy, or Practice
### (42 U.S.C. § 1983)
### (Against Defendant COUNTY and DOES 9-10)

90.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

91.    Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY, including unconstitutional policies of not providing medical/mental health care or immediate screening by a nurse to evaluate the overall fitness of those in custody for incarceration; of mishandling situations with individuals who suffer from mental health issues; of failing to follow detoxification protocols for newly admitted inmates/detainees who have recently used drugs; and of failing to place inmates/detainees who communicate suicidal intentions to staff on suicide watch and following suicide watch protocols.

92.    On information and belief, Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

93.    By reason of the aforementioned acts and omissions, Plaintiff has suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

94.    Defendants COUNTY and DOES 9-10, together with various other officials, whether named or unarmed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiff, and other individuals similarly situated.

95.    Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOES 9-10 were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiff.

96.    By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death. Accordingly, Defendants COUNTY and DOES 9-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

97.    Plaintiff brings this claim as successor in interest to DECEDENT and in her individual capacity and seeks survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiff's loss of DECEDENT's love, companionship, guidance, advice, and support. Plaintiff also seeks reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C. § 1988.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

### SIXTH CLAIM FOR RELIEF

### Negligence – Wrongful Death and Survival

### (Against All Defendants)

98.     Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

99.     Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS were charged with a duty to use reasonable care to prevent harm or injury to others. This duty includes providing prompt and adequate medical and mental health care to individuals in their custody, identifying and handling medical and mental health issues, screening inmates for physical fitness for incarceration, determining housing classification status for inmates, and protecting inmates/detainees from reasonably foreseeable harm.

100.   Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS breached their duty of care. The actions and inactions of Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS were negligent and reckless, including but not limited to, the neglect tactics and handling of the situation with DECEDENT, including failing to identify serious medical and mental health issues, failing to provide prompt medical and mental health care to DECEDENT, failing to house DECEDENT in a suicide-watch compliant cell, and failing to take reasonable steps to prevent DECEDENT's death by suicide after DECEDENT advised them of his suicidal intentions. Moreover, COUNTY and DOES 9-10 failed to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT.

101.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain

and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff has suffered emotional distress and mental anguish. Plaintiff also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

102.   THE COUNTY is vicariously liable for the wrongful acts of Defendants PATEL, FANEUFF, BLAJ, and DOE CORRECTIONAL OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

103.   Plaintiff brings this claim as successor in interest to DECEDENT and in her individual capacity and seeks survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiff's loss of DECEDENT's love, companionship, guidance, advice, and support.

## SEVENTH CLAIM FOR RELIEF

### Professional Negligence – Medical Malpractice

### California Government Code 845.6

### (Against Defendants DOE CORRECTIONAL OFFICERS and COUNTY)

104.   Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

105.   The Defendant DOE CORRECTIONAL OFFICERS who performed the cursory and inadequate mental health evaluation were aware of DECEDENT's medical and mental health emergency, in that DECEDENT repeatedly made them aware of his suicidal ideations and intentions to kill himself. Accordingly, proper

examination, diagnosis, treatment, and care for DECEDENT was essential to the preservation of DECEDENT's life.

106.   Defendants negligently failed to exercise the proper degree of knowledge, skill, and competence in examining, diagnosing, treating, and caring for DECEDENT, including but not limited to, the failure to conduct a proper medical assessment of DECEDENT; the failure to summon immediate emergency medical assistance for DECEDENT; and the failure to adequately monitor and supervise DECEDENT and PATEL, FANEUFF, and BLAJ's supervision of DECEDENT.

107.   DOE CORRECTIONAL OFFICERS purported to conduct a mental health evaluation of DECEDENT in response to DECEDENT's statements that he was suicidal and intended to kill himself and, notwithstanding the gravity and repeated nature of these statements, elected not to place DECEDENT on suicide watch and instead directed that he be returned to his cell, which contained a bedsheet that he would foreseeably use and ultimately did use to hang himself. This was below the standard of any medical professional, who had a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise. COUNTY medical providers, including DOE CORRECTIONAL OFFICERS, had a duty to DECEDENT to provide approximate and established standard of medical care. DECEDENT was a patient to which a duty is owed.

108.   As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of DOE CORRECTIONAL OFFICERS, Plaintiff has suffered emotional distress and mental anguish. Plaintiff also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

109.    The COUNTY is vicariously liable for the wrongful acts of Defendants DOE CORRECTIONAL OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

110.    Plaintiff brings this claim as successor in interest to DECEDENT and in her individual capacity and seeks survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiff's loss of DECEDENT's love, companionship, guidance, advice, and support.

## EIGHTH CLAIM FOR RELIEF

### Failure to Summon Medical Care (Cal. Gov. Code § 845.6)

### (Against All Defendants)

111.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

112.    Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

113.    Defendants were aware of DECEDENT's medical emergency, in that DECEDENT had explicitly and repeatedly informed them of his suicidal ideations and intention to kill himself, as well as of his recent drug use that exacerbated his risk of suicide. In other words, as alleged above, DECEDENT's medical emergency was obvious. Defendants are not entitled to immunity where the inmate is in obvious need

of medical care.

114.   Despite Defendants' actual knowledge that DECEDENT was in need of immediate medical and mental care as alleged above, Defendants failed to (1) conduct a proper medical and mental health assessment and/or suicide evaluation of DECEDENT; (2) summon immediate emergency medical assistance for DECEDENT, both before and after he was found unresponsive; (3) place DECEDENT on suicide watch when he was known to be suicidal and have a propensity for self-harm; (4) adequately monitor and supervise DECEDENT; (5) recognize and identify indications of suicidal tendencies.

115.   The COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. California Government Code Section 820(a) further states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person. Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment. Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

116.   As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiff has suffered emotional distress and mental anguish. Plaintiff also has

been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

117.   Plaintiff brings this claim as successor in interest to DECEDENT and in her individual capacity and seeks survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiff's loss of their DECEDENT's love, companionship, guidance, advice, and support. Plaintiff also seeks reasonable costs, and funeral and burial expenses.

## NINTH CLAIM FOR RELIEF

### Bane Act (Cal. Gov. Code § 52.1)

### (Against All Defendants)

118.   Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

119.   California Civil Code Section 52.1 ("the Bane Act"), prohibits any person from intentionally interfering with another person's constitutional rights. An intent to violate a person's constitutional rights can be shown by a reckless disregard for that person's constitutional rights.

120.   Here, Defendants acted with reckless disregard for DECEDENT's constitutional rights as set forth above. In particular, Defendants had specific knowledge of DECEDENT's suicidal ideation and intention to harm himself but failed to take action to protect him, demonstrating reckless disregard for DECEDENT's substantive due process rights.

121.   When Defendants engaged in their misconduct and inactions as alleged above—including failing to provide medical care and mental health treatment to

DECEDENT, who was exhibiting suicidal ideations and a propensity for self-harm, even when Defendants had direct information that DECEDENT desired to harm or kill himself—Defendants acted with reckless disregard for DECEDENT'S constitutional rights, including his constitutional right to timely and adequate medical attention.

122.   The conduct of Defendants as alleged above was a substantial factor in causing Plaintiff's and DECEDENT's harms, losses, injuries, and damages.

123.   The COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

124.   The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiff's rights, justifying an award of exemplary and punitive damages as to the individual Defendants.

125.   As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiff has suffered emotional distress and mental anguish. Plaintiff also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

126.   Plaintiff brings this claim as successor in interest to DECEDENT and in her individual capacity and seeks survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiff's loss of DECEDENT's love,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

companionship, guidance, advice, and support. Plaintiff also seeks reasonable costs, and funeral and burial expenses on this claim. Under the provisions of Cal. Civ. Code § 52, Defendants are also liable for reasonable attorney's fees and a civil penalty of $25,000.00.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendants COUNTY OF RIVERSIDE, YASH PATEL, JOSHUA FANEUFF, FLORIN BLAJ, and DOES 1-10, as follows:

(a) For compensatory damages and whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law;

(b) For funeral and burial expenses, and loss of financial support;

(c) For pre-death pain and suffering, and loss of enjoyment of life according to proof at trial;

(d) For punitive damages against the individual Defendants in an amount to be proven at trial;

(e) For statutory damages;

(f) For interest;

(g) For reasonable attorney's fees, including litigation expenses;

(h) For costs of suit; and

(i) For such further other relief as the Court may deem just, proper, and appropriate.

THE LAW OFFICES OF DALE K. GALIPO

Dated: May 4, 2023

By:  /s/ Dale K. Galipo
Dale K. Galipo
Benjamin S. Levine
Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

# JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.


Respectfully Submitted,


THE LAW OFFICES OF DALE K. GALIPO

Dated: May 4, 2023                    By: __/s/ Dale K. Galipo__
                                      Dale K. Galipo
                                      Benjamin S. Levine
                                      Attorneys for Plaintiffs